**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

_____

RICHARD SAMUELS,

     Plaintiff,

v.

MEDYTOX SOLUTIONS, INC.,
MEDYTOX DIAGNOSTICS, INC., and
INTERNATIONAL TECHNOLOGIES,
LLC,

     Defendants.
_____

Civil Action No. 13-7212 (SDW)

**OPINION**

September 8, 2014

**WIGENTON**, District Judge.

Before this Court is the motion of Defendants Medytox Solutions, Inc. ("MS"), Medytox Diagnostics, Inc. ("MD"), and International Technologies, LLC ("Intech," and collectively, "Defendants"), to transfer venue pursuant to 28 U.S.C. § 1404(a) from the District of New Jersey to the Southern District of Florida or, in the alternative, to dismiss the First Amended Complaint (the "FAC") pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 24-1). Plaintiff Richard Samuels ("Samuels") opposes this motion. (Dkt. No. 25). No oral argument was heard pursuant to Federal Rule of Civil Procedure 78. Upon consideration of the parties' submissions in connection with this motion, and for the reasons set forth herein, Defendants' Motion to Transfer is **DENIED**.

## I.    BACKGROUND

For the purposes of this motion, the Court accepts the allegations contained in the FAC as true.  Plaintiff Richard Samuels is a resident of South Orange, New Jersey, who, together with Ralph Perricelli ("Perricelli"), created and operated Defendant Intech.  (Dkt. No. 22, FAC, at ¶¶ 1, 9).  Intech operates as a medical testing laboratory in Waldwick, New Jersey.  (Id. at ¶ 4).  Prior to May 2013, Plaintiff and Perricelli each maintained a 50% ownership stake in the business.  (Id. at ¶ 9).  Defendant MS is a Nevada corporation with its principal place of business in West Palm Beach, Florida; Defendant MD is a wholly-owned subsidiary of MS incorporated and doing business in Florida.  (Dkt. No. 1-3).

In 2012, Plaintiff and Perricelli entered into negotiations with MD and MS for the purchase of Intech.  (Dkt. No. 25, Pl.'s Opp. Br., at 2).  In or about May 2013,[1] Plaintiff, Perricelli, and MD ultimately consummated a Membership Interest Purchase Agreement ("Purchase Agreement") under which MD agreed to pay a total of $627,000 in exchange for Plaintiff's and Perricelli's membership interests.  (Dkt. No. 22 at ¶ 12).  The purchase price of $627,000 consisted of the following: (1) $127,000 to be paid directly to Intech immediately; and (2) two $250,000 notes in the form of convertible debentures issued by MS, one of which was to be issued to Plaintiff, and the other to Perricelli.  (Id.)  The notes were to be convertible into MS stock at a 10% discount to the trailing thirty-day average share price, with conversion to become automatic exactly one year from the execution of the agreement.  (Dkt. No. 24-3, Ex. A, at ¶ 2).  Significantly, the Purchase Agreement contains a forum selection clause providing that "[v]enue

---

[1] The agreement itself recites the date of the agreement as January 14, 2013, but Plaintiff alleges that the agreement was not executed until sometime in May 2013.  (See Dkt. No. 24-3; Dkt. No. 25, Pl.'s Opp. Br. at 2).

for any dispute under this agreement shall lie in Miami-Dade County, <u>Florida</u>."  (<u>Id.</u> at ¶ 17 (emphasis added)).

Concurrently with the Purchase Agreement, Plaintiff also negotiated and executed an employment contract (the "Employment Agreement") whereby he agreed with Intech to serve as Intech's Chief Marketing Officer ("CMO") for three years at an annual salary of $100,000.[2] (Dkt. No. 22 at ¶¶ 37-39).  The Employment Agreement provides that either party could "terminate this Agreement without cause at any time upon sixty (60) days written notice to the other party." (<u>Id.</u> at ¶ 39).  In the event of such a termination, however, the Employment Agreement requires Intech to pay to Plaintiff the remaining balance to which he would have been entitled if he had remained as CMO for the full three-year term.  (<u>Id.</u>)  The Employment Agreement additionally provides for termination on the basis of either default or cause.  (<u>Id.</u>)  Under the "Termination for Default" provision, the defaulting party is given ten days to cure the default after receiving notice from the other party.  (<u>Id.</u>)  The "Termination for Cause" provision contains five potential causes for termination, including, inter alia, termination for various forms of criminal activity.  (<u>Id.</u>)  Finally, in contrast to the companion provision in the Purchase Agreement, the forum selection clause in the Employment Agreement provides that "[v]enue for any dispute as between the parties <u>shall exclusively</u> be vested in Bergen County, <u>New Jersey</u>."  (Dkt. 24-4, Ex. B, at ¶ 6.3 (emphasis added)).

Although Defendants appear to have initially complied with the terms of the Purchase Agreement in making the $127,000 payment to Intech and issuing the notes to Plaintiff and Perricelli (Dkt. No. 22 at ¶¶ 36, 74), it was not long after the two agreements were executed that

---

[2] Plaintiff alleges that the Employment Agreement also remained unexecuted until May 2013, even though he was paid under the agreement beginning in January 2013.  (<u>See</u> Dkt. No. 22 at ¶¶ 42, 44).

problems arose with respect to Plaintiff's and Perricelli's employment with Intech.  Indeed, Plaintiff avers that Perricelli was terminated for cause in August 2013—mere months after execution of the agreements—following an apparent investigation by Defendants.  (Id. at ¶ 50). Although Plaintiff was assured that he was not the subject of a similar investigation, Plaintiff alleges that Defendants demanded access to Plaintiff's personal credit card information.  (Id. at ¶¶ 51-52).

In the wake of these demands, on September 16, 2013, Plaintiff elected to notify Defendants of his intent to terminate his employment in sixty days in accordance with the Employment Agreement.  (Id. at ¶ 54).  In response to Plaintiff's notice, Defendants immediately notified Plaintiff that he was being terminated for cause.  (Id. at ¶ 55).  Plaintiff claims that this notice failed to identify any of the five causes enumerated in the Employment Agreement as the reason for his termination.  (Id.)  Furthermore, Plaintiff claims that Defendants' notice vaguely alleged, among other things, that Plaintiff conspired with another employee to "harm Medytox." (Id. at ¶ 56).  In essence, Plaintiff alleges that Defendants did not have any grounds for terminating Plaintiff's employment.  (See id. at ¶¶ 57-58).

On September 19, 2013, Plaintiff demanded from Defendants, within ten days, "(i) immediate payment . . . of the $250,000 Note under the [Purchase Agreement]; (ii) continuation of his salary under the Employment Agreement; and (iii) return of his Personalty."  (Id. at ¶ 59). In addition, Plaintiff offered to provide access to any banking transactions in order to satisfy Defendants that Plaintiff had not been engaged in any wrongdoing—an offer that Defendants ignored.  (Id. at ¶¶ 60-61).  Defendants ultimately failed to comply with Plaintiff's demands, which led to Plaintiff's filing of the instant action in New Jersey Superior Court on October 21, 2013.  (Id. at ¶ 62; Dkt. No. 25 at 12).  Plaintiff makes nine separate claims for relief and seeks to

recover approximately $250,000 under the Purchase Agreement and $225,000 under the Employment Agreement.  (Dkt. No. 22 at ¶¶ 63-118).  In addition, Plaintiff alleges conversion of personal items with a value of $10,000.  (Id. at ¶¶ 109-115).

On November 29, 2013, Defendants filed a notice of removal of the case to this Court on the basis of diversity jurisdiction.  (Dkt. No. 1, Notice of Removal).  On December 6, 2013, Defendants made their initial motions to transfer the case to the Southern District of Florida or to dismiss the case.  (Dkt. No. 3, Mot. to Transfer).  Plaintiff cross-moved on December 9th to remand the case to New Jersey Superior Court.  (Dkt. No. 4, Mot. to Remand).  While those motions were still pending, Defendants filed a separate action against Plaintiff in the Southern District of Florida on February 26, 2014.  (Dkt. No. 28-1 at 1).  Plaintiff then moved pro se to dismiss that action for lack of personal jurisdiction or to transfer the case to New Jersey, a motion which was ultimately denied by an order dated July 18, 2014.  (Id. at 17).  On April 16, 2014, Plaintiff was granted leave to amend his complaint in this case, and Defendants' pending motions were administratively terminated with direction to refile them following the filing of the FAC.  (Id.)  The FAC was filed on May 1, 2014. (Dkt. No. 22).  Defendants filed the instant motion on May 23, 2014.  (See Dkt. No. 24).

For the following reasons, Defendants' motion to transfer the entire case to the Southern District of Florida is **DENIED**.

## II.    DISCUSSION

### A.  Traditional Transfer Analysis Under § 1404(a)

Section 1404(a) permits a district court to transfer a case to any other district where venue is proper "for the convenience of parties and witnesses, in the interest of justice."  28 U.S.C. §1404(a).  The purpose of § 1404(a) is twofold: to avoid wasting "time, energy, and

money" and to "protect litigants, witnesses and the public against unnecessary inconvenience and expense." Cont'l Grain Co. v. Barge FBL-585, 364 U.S. 19, 26-27 (1960). A decision to transfer venue is based on "all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995) (internal quotations omitted). The party seeking transfer bears the burden of establishing that transfer is necessary. Id. In this connection, the moving party must "show the proposed alternative forum is not only adequate, but also more appropriate than the present forum." Hoffer v. InfoSpace.com, Inc., 102 F. Supp. 2d 556, 572 (D.N.J. 2000). This burden is a heavy one; as the Third Circuit has noted, "unless the balance of convenience of the parties is strongly in favor of defendant, the plaintiff's choice of forum should prevail." Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970).

The decision to grant or deny a transfer under § 1404(a) is committed to the trial court's sound discretion. Cadapult Graphic Sys. v. Tektronix, Inc., 98 F. Supp. 2d 560, 564 (D.N.J. 2000). Before exercising that discretion, however, the court must first ascertain whether the action could have been properly brought in the transferee district. Shutte, 431 F.2d at 24. The movant bears the burden of establishing "the propriety of venue in the transferee district and jurisdiction over all of the defendants." LG Electronics, Inc. v. First Int'l Computer of Am., Inc., 138 F. Supp. 2d 574, 586 (D.N.J. 2001). Once the court determines that jurisdiction and venue would be proper in the transferee district, the court must consider an array of both private and public interest factors in deciding whether to grant the transfer.[3] Jumara, 55 F.3d at 879-80. There is no exhaustive list of private and public factors to be considered; rather, the analysis

---

[3] These factors will be laid out in detail below.

under § 1404(a) is flexible and individualized, based on the unique facts of each case.  Lawrence v. Xerox Corp., 56 F. Supp. 2d 442, 450 (D.N.J. 1999).   As the moving parties, Defendants MS, MD, and Intech bear the burden of persuasion to show that "the proposed alternative forum is not only adequate, but also more convenient than the present forum."  Id. at 451.  Complicating the analysis, however, is the presence of conflicting forum selection clauses in the Purchase Agreement and the Employment Agreement.   As a threshold matter, it must be determined whether the existence of those clauses renders the traditional private and public factors analysis under Jumara less than fully applicable.

**B.  The Effect of a Forum Selection Clause on Traditional Transfer Analysis**

It is well established that transfer requests based on forum selection clauses are governed by § 1404(a).  See Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 32 (1988).  In Stewart, the Court specifically endorsed the view that the existence of a forum selection clause should merely be considered one factor among many, being neither dispositive nor irrelevant in the § 1404(a) analysis.  Id. at 31.

In a recent case, however, the Supreme Court had occasion to clarify the effect of a valid forum selection clause on the traditional multifactor private-public interest analysis.  See Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. Of Tex., 134 S. Ct. 568 (2013).  In Atlantic Marine, the Court found that the existence of such a clause "requires district courts to adjust their usual § 1404(a) analysis in three ways," two of which are relevant to this motion.  Id. at 581.  As for the first of these adjustments, the Court directed that the plaintiff's choice of forum be given no weight.  Id.  Instead, the Court argued, the burden shifts to the plaintiff to demonstrate "that transfer to the forum for which the parties bargained is unwarranted."  Id.  In so holding, the Court reasoned that a bargained-for forum selection clause represents the plaintiff's exercise of

"its 'venue privilege' before a dispute arises," and, therefore, "[o]nly that initial choice deserves deference." Id. at 582. Second, the Court required that the parties' private interests be completely disregarded when considering a § 1404(a) transfer motion based on a forum selection clause. The Court viewed the parties' agreement as a waiver of "the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." Id. Therefore, only the public interest factors are relevant in the presence of a forum selection clause, and since "those factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases." Id.

Clearly, then, the presence of a valid forum selection clause radically alters the traditional § 1404(a) analytical framework. What is less clear, however, is the effect on the analysis when there exist conflicting—but independently valid—forum selection clauses in two or more contracts between the parties. Such a situation is easily distinguishable from that encountered in Atlantic Marine, since that case involved only one unambiguous forum selection clause. See id. at 575. While there is no direct authority in either this District or the Third Circuit on the question, several cases in other districts are instructive.

As a general matter, when faced with two or more conflicting forum selection clauses, federal courts are loath to enforce all of them "out of concern for wasting judicial and party resources." See, e.g., Jones v. Custom Truck & Equipment, LLC, No. 10-611, 2011 WL 250997, at *4 (E.D. Va. Jan. 25, 2011). The rationale behind this general rule stems from the fact that enforcement of all of the conflicting forum selection clauses would result in litigation of identical claims and issues in multiple forums. Id. The analysis of which forum selection clause to enforce, or whether to enforce any of them at all, is dependent upon the facts of a particular case.

Id.; Freedom Mortg. Corp. v. Irwin Fin. Corp., No. 08-146, 2009 WL 763899, at *4-5 (D. Del. Mar. 23, 2009).

In line with the fact-intensive nature of the analysis, courts have taken varying approaches in determining whether to enforce none or merely one of the forum selection clauses at issue in a given case.  See, e.g., Jon Feingersh Photography, Inc. v. Pearson Educ., Inc., 978 F. Supp. 2d 463 (E.D. Pa. 2013); Capsource Fin. Inc. v. Moore, No. 11-2753, 2012 WL 2449935, at *1 (D. Minn. June 27, 2012); Jones, 2011 WL 250997 at *1; Buffet Crampon S.A.S. v. Schreiber & Keilwerth, Musikinstrumente GMBH, No. 09-347, 2009 WL 3675807, at *1 (N.D. Ind. Nov. 2, 2009).  In Feingersh, for example, the plaintiff brought suit in the Eastern District of Pennsylvania on 321 separate claims of copyright infringement under agreements with either differing forum selection clauses or no forum selection clause at all.  978 F. Supp. 2d at 465.  In rejecting the defendant's motion to transfer, the court performed the pre-Atlantic Marine mode of analysis in which a forum selection clause is considered just one factor in the private-public interest analysis.[4]  See id. at 466-67.  Finding that private interests favored transfer of only 127 of the claims and retention of jurisdiction over the remaining 194, the court undertook consideration of the public interest factors to determine the proper disposition of the motion.  Id. at 467.  Specifically, the court focused on the potential waste of judicial and party resources in the event that it decided to transfer only some of the claims and retain jurisdiction over the others.  Id. at 468.  In light of that concern, the court held that the public interest favored litigation of all 321 claims in a single forum, and since private interests favored retention of jurisdiction over a majority of the claims, the court denied the defendant's motion to transfer venue in its entirety.  Id.

---

[4] Although this case was decided two months before Atlantic Marine, the analysis employed is relevant here, as discussed below.

In contrast to the court in <u>Feingersh</u>, which declined to enforce either of the forum selection clauses at issue, the court in <u>Jones</u> decided to enforce one clause over the other and transfer the entire case.  <u>See Jones</u>, 2011 WL 250997, at *4-6.  Significant in <u>Jones</u> was the issue of whether the clauses were permissive or mandatory.  <u>Id.</u> at *5.  Before reaching the <u>Jones</u> court's analysis, the Court will first address the difference between permissive and mandatory forum selection clauses.  A forum selection clause is mandatory if it "requires a plaintiff to sue in the designated forum," whereas a permissive forum selection clause merely authorizes the parties to file suit in the selected forum.  <u>Id.</u>  In other words, mandatory forum selection clauses designate a particular forum as having <u>exclusive</u> jurisdiction; permissive forum selection clauses, on the other hand, can be thought of as merely "consent to jurisdiction" clauses.[5]  <u>Int'l Bus. Software Solutions, Inc. v. Sail Labs Tech., AG</u>, 440 F. Supp. 2d 357, 363 nn. 1-2 (D.N.J. 2006).

While the <u>Jones</u> court appears to interpret permissive and mandatory forum selection clauses differently than does the Third Circuit,[6] the case is important for its disposition of the motion to transfer in light of the conflicting forum selection clauses.  There, the permissive forum selection clause in one of the contracts at issue allowed the parties to litigate their claims under the contract in the Eastern District of Virginia.  <u>Jones</u>, 2011 WL 250997, at *2.  The mandatory forum selection clause in the second contract, on the other hand, required claims under the contract to be litigated in Missouri.  <u>Id.</u>  With claims under both contracts still

---

[5] By way of example, the Third Circuit has held that the following clause is unambiguously mandatory: "This Lease shall be construed in accordance with the laws of the Commonwealth of Pennsylvania, with venue laid in Butler County, Pennsylvania."  <u>Wall St. Aubrey Golf, LLC v. Aubrey</u>, 189 F. App'x 82, 85 (3d Cir. 2006).
[6] Based on the language of the two clauses at issue in this case, the Third Circuit would likely find both clauses mandatory.  <u>See</u> <u>Compare</u> <u>Jones</u>, 2011 WL 250997, at *2-6 (holding that because one of the forum selection clauses did not use the word "exclusive" or one of its variants, the clause was not mandatory) <u>with</u> <u>Aubrey</u>, 189 F. App'x at 85 (finding a forum selection clause to be mandatory even in the absence of any clear language excluding other potential forums).

outstanding, the court determined that it would "not enforce both forum selection clauses and divide this action," since to do so "would be wasteful and inefficient."  Id. at *5.  All of the claims were based upon the same set of facts, and the two agreements at issue were clearly "constituent parts of a single transaction"; thus, the court held that "enforcing both clauses would be unreasonable under the circumstances."  Id.  The court then decided to enforce the mandatory forum selection clause, which required the entire case to be transferred to the Western District of Missouri, since the clause excluded venue outside of Missouri.  Id. at *6.  Notably, however, the court went on to declare that transfer would have been inappropriate in the absence of the mandatory forum selection clause, since the only reason to transfer in that instance would have been for the convenience of the defendant—a reason that courts generally consider to be insufficient.  Id.

These cases make clear that there is not a "one size fits all" analysis that this Court must apply.  Therefore, this Court must now undertake to fashion an analytical framework that fits the facts presented here.

### C.  Analysis

As a threshold matter, this Court must determine whether the instant action could have been brought in the transferee district—the Southern District of Florida.  To find that the action could have been brought in the transferee district, the Court must be satisfied that the transferee district has personal jurisdiction over all of the Defendants and that venue would be proper in the transferee district.  First, the facts plainly demonstrate that personal jurisdiction exists over Defendants MD and MS.  Defendant MD is incorporated in Florida as a subsidiary of defendant MS, a Nevada corporation with its principal place of business in West Palm Beach, Florida.  In

addition, Intech does not dispute personal jurisdiction over it in Florida; therefore, this Court is satisfied that the Southern District of Florida has personal jurisdiction over all Defendants.

This Court must next consider whether the Southern District of Florida is a proper venue. Venue in actions based upon diversity jurisdiction is appropriate in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).   Both MS and MD satisfy § 1391(b)(1), since MS maintains its principal place of business in West Palm Beach, Florida, and MD is incorporated and doing business in Florida.  As for Intech, it is deemed to reside in that district under 28 U.S.C. § 1391(c)(2).[7]  Thus, this action could have been brought in the Southern District of Florida.

### 1.  The Role of the Competing Forum Selection Clauses

Before reaching the proper analytical framework for this motion to transfer, this Court must determine what effect, if any, the conflicting forum selection clauses in the Purchase Agreement and the Employment Agreement have on the structure of the Court's analysis.  First, it is noted that there is no evidence that either of the forum selection clauses at issue is invalid or unenforceable.  Forum selection clauses are presumptively valid, and they will generally be enforced absent a showing of fraud, overreaching, or unreasonableness in being forced to litigate

---

[7] Although Intech maintains its principal place of business in New Jersey and is organized as a limited liability company under the laws of New Jersey, the Third Circuit has held that for purposes of diversity jurisdiction, the citizenship of an LLC is determined by the citizenship of its members.  See Zambelli Fireworks Mfg. Co. v. Wood, 592 F.3d 412, 420 (3d Cir. 2010). Since MD is the sole member of Intech by virtue of the Purchase Agreement, Intech is deemed to be a citizen of Florida.  Therefore, complete diversity is preserved in this case.

in the chosen forum.  See Foster v. Chesapeake Ins. Co., 933 F.2d 1207, 1219 (3d Cir. 1991).
No such showing has been made here; therefore, the forum selection clauses at issue are valid
and enforceable.[8]

Given the validity of the forum selection clauses, their function in the § 1404(a) transfer
analysis is considered next.  On this point, Defendants argue that the presence of the forum
selection clauses requires this Court to completely disregard any private interest factors and
focus solely on public interests in light of the Supreme Court's decision in Atlantic Marine.
Defendants further argue that the public interest factors weigh in favor of transfer, with specific
focus on duplicity of litigation and court congestion.  Plaintiff, on the other hand, argues that the
forum selection clause in the Employment Agreement (which points to New Jersey as the proper
forum) is mandatory, while the forum selection clause in the Purchase Agreement (pointing to
Florida) is merely permissive, thus requiring the Court to enforce only the New Jersey forum
selection clause under the reasoning in Jones.  Both parties' arguments, however, miss the mark.

First, Plaintiff's argument that the Florida forum selection clause is permissive is
erroneous in light of the Third Circuit's holding in Wall St. Aubrey Golf, LLC v. Aubrey.  The
forum selection clause in the Purchase Agreement reads as follows:

> 17.  GOVERNING LAW.  The parties agree that this Agreement
> shall be deemed made and entered into in the state of Florida and
> shall be governed and construed in accordance with the law of the
> state of Florida.  Venue for any dispute under this Agreement shall
> lie in Miami-Dade County, Florida.

---

[8] Plaintiff also argues that the forum selection clause in the Purchase Agreement is not supported
by consideration because Plaintiff has not yet personally received any benefit under the contract.
This position contradicts fundamental contract law.  As Defendants correctly point out,
consideration may be in the form of a promise to perform an act.  See, e.g., Sipko v. Koger, Inc.,
214 N.J. 364, 380 (2013).  The failure to perform that act represents not a failure of
consideration, but rather a breach of contract.  That is, the consideration is contained in the
promise itself—not in the performance of it.  Here, the parties' mutual promises to extend value
to one another clearly represent sufficient consideration.

(Dkt. No. 24-3 at ¶ 17 (emphasis added)).  Plaintiff incorrectly relies on the Eastern District of Virginia's decision in Jones for the proposition that the failure to include the word "exclusive" or one of its variants renders the above provision merely permissive.  In Aubrey, however, the Third Circuit found a forum selection clause similar to the above to be mandatory, holding that the use of the word "shall" clearly evinced the clause's mandatory nature.  See Aubrey, 189 F. App'x at 85.  Thus, the Purchase Agreement's use of the word "shall" renders the forum selection clause mandatory and not permissive.  There is no dispute among the parties as to the mandatory nature of the New Jersey forum selection clause in the Employment Agreement. Accordingly, this Court will treat both forum selection clauses as mandatory.

Second, the Defendants' argument for the application of Atlantic Marine is without support on the facts of the present case.  As previously discussed, the facts of this case are clearly distinguishable from the facts presented in Atlantic Marine.  Here, we are faced with two mandatory forum selection clauses in two separate contracts under which Plaintiff has made distinct claims against Defendants.  In Atlantic Marine, by contrast, the Supreme Court dealt with a single subcontract that included a single forum selection clause.  See Atlantic Marine, 134 S. Ct. at 575.  Undergirding the Supreme Court's direction that private interests be completely disregarded is the fact that "[w]hen parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation."  Id. at 582.  As a result, a reviewing court "must deem the private-interest factors to weigh entirely in favor of the preselected forum."  Id.

The situation is entirely different when the parties have entered into two contracts with two disparate forum selection clauses, as is the case here.  The parties' preferences in this case obviously point to two different preselected forums; the parties have not unambiguously agreed

to litigate in a particular forum as the parties did in <u>Atlantic Marine</u>.  Therefore, this Court rejects Defendants' argument for the application of the <u>Atlantic Marine</u> adjustments to the traditional § 1404(a) transfer analysis.  As a result, the competing private interests of the parties will be weighed, as normal, giving due regard to the forum selection clauses contained in both the Employment Agreement and the Purchase Agreement.  The public interest factors will then be analyzed to determine whether transfer would be appropriate.

### 2.  Private Interest Factors

With respect to the private interests of the litigants, the Third Circuit has specifically enumerated the following factors: (1) the plaintiff's preferred forum;  (2) the defendant's preferred forum; (3) where the claim or claims arose; (4) the convenience of the parties, with special emphasis on their respective physical and financial conditions; (5) the convenience of the witnesses with respect to their availability for trial; and (6) the location of books and records to the extent that their location would hinder their ability to be produced in discovery.  <u>Jumara</u>, 55 F.3d at 879.  In considering these factors, we begin with Plaintiff's choice of forum, since that choice "is a paramount consideration in any determination of a transfer request."  <u>Shutte</u>, 431 F.2d at 25.  Thus, "unless the balance is strongly tipped in favor of the defendant, the plaintiff's choice of forum should not be disturbed."  <u>Park Inn Int'l, L.L.C. v. Mody Enters.</u>, 105 F. Supp. 2d 370, 377 (D.N.J. 2000) (quoting <u>Gulf Oil Corp. v. Gilbert</u>, 330 U.S. 501, 508 (1947)).  Moreover, when the plaintiff chooses a home forum, that choice is "entitled to greater deference."  <u>Tischio v. Bontex, Inc.</u>, 16 F. Supp. 2d 511, 521 (D.N.J. 1998) (quotation omitted).  It must be noted, however, that the plaintiff's choice is not conclusive; if it were, then the courts would have no need to perform a multi-factor analysis.  <u>See</u> <u>Jumara</u>, 55 F.3d at 879; <u>Tischio</u>, 16 F. Supp. 2d at 521 (A plaintiff's choice of forum "is simply a preference; it is not a right.").

Here, Plaintiff's choice to litigate in New Jersey is entitled to deference because New Jersey is Plaintiff's home forum, and when Plaintiff chooses a home forum, it is reasonable for the court to assume that that choice is convenient.  Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255 (1981).  Therefore, this factor weighs against transfer.  Defendants, however, obviously prefer to litigate this case in the Southern District of Florida; as such, this factor weighs in favor of transfer.  In order to more clearly determine whose preference should prevail, it is appropriate to analyze the distribution of both the claims and the overall amount in controversy under the Employment Agreement and the Purchase Agreement, respectively.[9]

As to the Employment Agreement (containing the New Jersey forum selection clause), Counts One (breach of contract), Six (breach of implied covenant of good faith and fair dealing), and Seven (breach of termination provisions in Employment Agreement) in the FAC each clearly pertain to that contract.  Count Eight, which alleges conversion of Plaintiff's personal property located at Intech's office, is also derivatively related to Plaintiff's employment, and thus may be considered related to the Employment Agreement.  Thus, of the nine total claims set forth in the FAC, four relate to the contract containing the New Jersey forum selection clause.  With respect to the Purchase Agreement, Counts One through Six, along with Counts Eight and Nine, each clearly pertain to that contract.  Therefore, eight of the nine claims in the FAC relate to the contract containing the Florida selection clause.  Considering only the raw number of claims relating to each of the two contracts at issue, the balance between Plaintiff's preferred forum and Defendant's preferred forum clearly tips in favor of Defendant.

---

[9] This is similar to the analysis in Feingersh, discussed supra, in which the Eastern District of Pennsylvania compared the number of claims pointing to Defendants' desired forum against the number of claims pointing to Plaintiff's desired forum.  See Feingersh, 978 F. Supp. 2d at 467. Because the amount in controversy under each of the contracts is relatively easy to ascertain in this case, this Court finds it helpful to examine that distribution, as well.

When the overall amount in controversy under each of the two contracts is examined, however, Plaintiff and Defendant are on more equal footing. Indeed, the total amount sought under the Employment Agreement is $225,000 (plus interest and attorney's fees), while the amount sought under the Purchase Agreement is $250,000 (plus interest and attorney's fees).[10] Thus, the amounts sought under each agreement are essentially evenly split, with a slight edge given to the Purchase Agreement. By this measure, the balance could not be said to be strongly tipped in favor of the Defendant. In sum, given that the Plaintiff's choice of forum is entitled to deference, Plaintiff's preference should prevail.

Next, the locus of the events giving rise to the claims is considered. This factor will weigh in favor of the forum that contains "the center of gravity of the dispute, its events and transactions." Park Inn, 105 F. Supp. 2d at 377. More specifically, in disputes involving contracts, "a court should consider where the contract was negotiated or executed, where the contract was to be performed, and where the alleged breach occurred." Depuy Synthes Sales, Inc. v. Gill, No. 13-04474, 2013 WL 5816328, at *8 (D.N.J. Oct. 29, 2013). Here, the facts as alleged by Plaintiff clearly demonstrate that New Jersey is the center of gravity for this dispute. Indeed, Plaintiff specifically alleges in the FAC that all of the events giving rise to the claims under both the Purchase Agreement and Employment Agreement occurred in New Jersey. Defendants do not challenge this assertion; in fact, Defendants did not allege in their complaint in the Florida suit the existence of any facts or events occurring in Florida. (See Dkt. No. 28-1, Ex., at 16). Therefore, this factor weighs decidedly against transfer.

The next factor to be considered is the convenience of the parties. This factor focuses specifically on the respective financial and physical condition of the parties. There are no facts

---

[10] The $10,000 sought under Count Eight of the FAC, which seems to be related to both contracts, is not a factor.

in this case that indicate any physical hardship that would result from having to litigate in New Jersey or Florida; thus, the Court will focus solely on the financial wherewithal of the respective parties.   Plaintiff argues that being required to litigate this case in Florida would work a considerable financial hardship on him, but there are no facts before this Court that demonstrate such hardship.   Neither Plaintiff nor Defendants have submitted any affidavits regarding their financial wherewithal to litigate this suit in either forum.   This Court does note, however, that Plaintiff is currently representing himself <u>pro</u> <u>se</u> in the Florida action. On the other hand, it appears that Defendants possess considerable financial means to litigate this case in New Jersey. (<u>See</u> Dkt. No. 26-1, Ex. 2).  Thus, the relative convenience of the parties weighs slightly in favor of retention of the case.   Finally, as for the convenience of witnesses and the location of books and records, there is nothing to indicate that any witnesses or documents would be unavailable if the case either remained in this District or were to be transferred to the Southern District of Florida.  Therefore, these two factors do not weigh in favor of either party.

In consideration of all of the above, the private interests weigh against transfer.

### 3.  Public Interest Factors

With respect to the public interest factors, the Third Circuit identified those as follows: (1) enforceability of a potential judgment; (2) practical considerations with respect to efficiency and cost savings;  (3) the comparative administrative difficulty between the forums, with specific focus on court congestion; (4) "the local interest in deciding local controversies at home;" (5) public policy considerations; and (6) "the familiarity of the trial judge with the applicable state law in diversity cases."   <u>Jumara</u>, 55 F.3d at 879 (internal citations omitted).   Among these factors, the analysis will focus on practical considerations and the relative administrative

difficulties resulting from court congestion, since those are the factors on which Defendants place the most emphasis.

As for Defendants' arguments regarding court congestion, it should be noted at the outset that "relative congestion of the respective courts' dockets is not a factor of great importance on a motion to transfer." Eastman v. First Data Corp., No. 10-4860, 2011 WL 1327707, at *5 (D.N.J. Apr. 5, 2011) (quoting Kisko v. Pa. Cent. Transp. Co., 408 F. Supp. 984, 987 (M.D. Pa. 1976)) (internal quotations omitted).  While this District is indeed busier in terms of overall caseload than is the Southern District of Florida, the difference is not so stark so as to overcome Plaintiff's private interest in litigating this case in New Jersey.  Thus, this factor does not weigh heavily in favor of transfer.

Next, any practical considerations that might warrant transfer of this case, including judicial efficiency and avoidance of duplicative litigation, will be examined.  Ordinarily, transfer is advisable where there are multiple lawsuits pending on the same subject matter and transfer would allow for consolidation of the cases before a single judge.  See Lawrence v. Xerox Corp., 56 F. Supp. 2d 442, 453-54 (D.N.J. 1999).  In addition, when there exist multiple suits concerning the same subject matter and involving the same parties, the "first-to-file" rule provides that priority is generally given to the first-filed suit "absent a showing that the balance of inconvenience favors transfer or unless there are special circumstances which justify giving priority to the second suit." Ricoh Co. v. Honeywell, Inc., 817 F. Supp. 473, 487 (D.N.J. 1993).

Defendants in this case incorrectly argue that the first-to-file rule is inapplicable due to the presence of the forum selection clause in the Purchase Agreement.  Defendants accurately state that the presence of a single forum selection clause will almost always render the first-to-file rule inapplicable.  The reason for this exception is, of course, to prevent a plaintiff from

taking advantage of the first-to-file rule by first filing a lawsuit in a forum that the forum selection clause does not permit.  See, e.g., Universal Operations Risk Mgmt., LLC v. Global Rescue LLC, No. 11-5969, 2012 WL 2792444, at *6 (N.D. Cal. July 9, 2012).  But that quite clearly is not the situation in this case.  As discussed, this case involves two valid, competing forum selection clauses, and Plaintiff is in compliance with one of them.  In such a situation, this Court is satisfied that the first-to-file rule is applicable.[11]  As such, because Plaintiff filed suit approximately four months prior to Defendants' filing of suit in Florida, Plaintiff's suit in this Court will be given priority over Defendants' suit in the Southern District of Florida.

Complicating the analysis, however, is the fact that the first-to-file rule is generally employed as a device to ensure a consolidation of cases.  Its application here will not result in such a consolidation, since the Florida litigation will continue concurrently with this litigation.[12]  But the duplicity of litigation is a problem of Defendants' own creation.  Defendants chose to file a separate suit in Florida prior to the resolution of the motion now before this Court, asserting claims in that suit that they could have asserted (and likely would have been required to assert) here as counterclaims.  Defendants cannot use their own lawsuit, filed well after Plaintiff filed the instant action, in support of the argument that this case should be transferred in the name of

---

[11] The analysis would likely be altered if the claims applicable to one forum selection clause were clearly meritless and were merely brought for the purpose of taking advantage of the forum selection clause.

[12] This situation is not, however, entirely novel.  The Third Circuit has consistently held since 1941 that the first-filed rule may be used to enjoin parties from litigating a later-filed suit in another district court on the same issues and involving the same parties.  See Crosley Corp. v. Hazeltine Corp., 122 F.2d 925, 928 (3d Cir. 1941).  See also E.E.O.C. v. Univ. of Pa., 850 F.2d 969, 971 (3d Cir. 1988) ("The first-filed rule encourages sound judicial administration and promotes comity among federal courts of equal rank.  It gives a court 'the power' to enjoin the subsequent prosecution of proceedings involving the same parties and the same issues already before another district court.").

judicial efficiency.  When the party seeking a transfer on judicial efficiency grounds is the direct cause of the inefficiency, transfer is not appropriate.

Other public interest factors also weigh in favor of retention of this case, particularly this jurisdiction's "interest in deciding local controversies at home."  <u>Jumara</u>, 55 F.3d at 879.  As has been discussed at length, the locus of many, if not all, of the operative facts in this case is New Jersey.  In light of the fact that New Jersey is clearly the center of gravity in this dispute, this District has a strong interest in hearing this case.  The other public interest factors—enforceability of a potential judgment, public policy considerations, and familiarity with the state law to be applied—do not appear to weigh in favor of either party.  Therefore, the totality of the public interest factors weigh in favor of denying transfer.  Balancing the various private and public interests pursuant to Section 1404(a), this Court finds that Defendants have failed to show that the Southern District of Florida would be a more convenient forum.

**III.    CONCLUSION**

For the reasons set forth above, Defendants' Motion to Transfer is **DENIED**.

<u>s/ Susan D. Wigenton, U.S.D.J.</u>

Orig:    Clerk
cc:      Parties
         Magistrate Judge Arleo